FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 NOV -1 PM 3:18

AT BALTIMORE

BY_____DEPUTY

MFD: USAO 2018R00628

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. ELH-18-0555 |
| | * | (Theft of Government Property, |
| SHARON LYNN LANDRON, | * | 18 U.S.C. § 641; Aiding and Abetting, |
| | * | 18 U.S.C. § 2.) |
| Defendant | * | |

*******

## INDICTMENT

### COUNT ONE

The Grand Jury for the District of Maryland charges that:

**Introduction**

At all times relevant to the charges in this Indictment:

1. The Office of Personnel Management ("OPM") was an Agency of the United States within the United States Government which administered the Civil Service Retirement System ("CSRS"). CSRS was a defined benefit, contributory retirement system for eligible federal employees, known as "annuitants," upon retirement from federal civil service. Federal employees could become eligible for a retirement annuity if they completed at least five years of federal service. Annuitants received their benefits throughout their lifetimes. OPM makes benefits payments to qualified annuitants on a monthly basis either by check or direct deposit.

2. E.C. was a former federal employee who began receiving a CSRS annuity after her retirement in or about May 1998. E.C. died on or about July 7, 2011. At the time of her death, she was receiving her annuity payments by direct deposit to an account in her name at Taylor Bank. CSRS terminates benefit payments when notified of an annuitant's death.

1

3. **SHARON LYNN LANDRON ("LANDRON")** is the daughter of E.C. After E.C.'s death, **LANDRON** unlawfully spent the annuity funds that OPM continued to deposit into E.C.'s account each month on alcohol, television shopping network purchases, utilities, and other sundries at a cost to the United States government of over $103,000.

4. OPM received forms in 2011, 2012, and 2014, purportedly completed and signed by E.C., attesting that E.C. was still alive.

5. OPM only learned of E.C.'s death in or about 2015 when it compared its annuitant rolls to the Social Security Death Index ("SSDI"), and found that E.C. was reported deceased in the SSDI.

6. Agents of the OPM Office of Inspector General ("OIG") contacted Taylor Bank in or about May 2015 and inquired about the status of the accountholder of the account into which annuity payments had been deposited. Taylor Bank responded that there was no indication that the accountholder was deceased, and that there was regular ATM card activity on the account.

7. In response to the information that E.C. might have been deceased, Taylor Bank suspended ATM card access to the account. Approximately two weeks later, **LANDRON** appeared at a Taylor Bank branch seeking a new ATM card for her mother's account, stating that the one she had no longer functioned.

8. OPM OIG agents located and interviewed **LANDRON** on or about May 4, 2018. **LANDRON** admitted that she had spent the annuity funds, and that she completed and submitted the OPM proof of life attestations to OPM. **LANDRON** further stated she was the only person with access to the account into which the funds were deposited.

9.     Neither **LANDRON** nor any other individual was entitled to receive CSRS annuity payments on E.C.'s behalf after her death.

### The Charge

10.    Beginning in or about July 2011 and continuing through in or about April 2015, in the District of Maryland, the Defendant,

**SHARON LYNN LANDRON,**

did embezzle, steal, purloin, and knowingly convert to her use and the use of another, any money of the United States and any department and agency thereof, whose value exceeded $1,000, namely Civil Service Retirement System annuity payments to which she was not entitled.

18 U.S.C. § 641
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. As a result of the offense set forth in Count One of the Indictment, the defendant,

**SHARON LYNN LANDRON,**

shall forfeit to the United States any and all property constituting, or derived from, proceeds obtained directly or indirectly as a result of any such violation.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or,

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property, that is, $103,488.

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)

Robert K. Hur
United States Attorney

SIGNATURE REDACTED

Foreperson

Nov. 1, 2018

Date